UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-cv-20897-KMM

AHMAD ELAKIL,

     Plaintiff,

vs.

PUBLIC HEALTH TRUST OF MIAMI-
DADE COUNTY, FLORIDA; UNIVERSITY
OF MIAMI; and RICARDO KOMOTAR,

     Defendants.

_____/

## MOTION OF DEFENDANTS, UNIVERSITY OF MIAMI AND RICARDO KOMOTAR, TO DISMISS PLAINTIFF'S COMPLAINT

Defendants, University of Miami (the "University") and Ricardo Komotar ("Dr. Komotar"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby move to dismiss the Complaint (D.E. 1) filed by Plaintiff, Ahmad Elakil, for failure to state a claim. Plaintiff has brought suit because he was not awarded a Certificate of Completion for a medical fellowship program that he, admittedly, failed to complete following his voluntary resignation. None of Plaintiff's claims is factually or legally viable. To make matters worse, his Complaint is an improper shotgun pleading, in which each Count incorporates by reference all prior allegations and Counts. For all of these reasons, the Complaint properly should be dismissed.

## INTRODUCTION

The following pertinent allegations are taken from Plaintiff's Complaint (D.E. 1). Defendant, Public Health Trust of Miami-Dade County, Florida (the "Trust"), operates Jackson Health System. (Compl. ¶ 2.) The Trust is "an agency and instrumentality of Miami-Dade County." (*Id.*) The University is a "non-profit educational institution" that "operates graduate medical

education and training programs." (*Id*. ¶ 3.) Attached hereto as Exhibit A are Sunbiz records from the Florida Department of Corporations, which show that the University is a private corporation organized under the laws of the State of Florida.[1] Plaintiff alleges that the Trust and the University operate a Neuro-Oncology Fellowship Program (the "Fellowship") at Jackson Health Systems. (Compl. ¶¶ 3, 15.) Plaintiff alleges that Dr. Komotar is the "Director of the Fellowship and an Associate Professor" at the University. (*Id*. ¶ 4.) Plaintiff alleges that, "[f]ollowing completion of a fellowship, fellows receive a competition certificate, signifying the institutions' determination that the physician successfully completed the fellowship." (*Id*. ¶ 18.)

In July 2019, Plaintiff entered the Fellowship as a fellow. (Compl. ¶¶ 14, 19.) As a fellow, Plaintiff "worked under a Collective Bargaining Agreement with the Committee of Interns and Residents" (the "CBA"). (Compl. ¶ 24.) A true and correct copy of the CBA is attached hereto as Exhibit B.[2]

---

[1]      The Court properly may take judicial notice of these government records in ruling on the instant Motion to Dismiss. *See, e.g.*, *Am. Marine Tech, Inc. v. World Group Yachting, Inc.*, 418 F. Supp. 3d 1075, 1081 (S.D. Fla. 2019) (considering Sunbiz records because a "court properly takes judicial notice of relevant public records in deciding a motion to dismiss") (citing *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010)); *Bellinzoni, S.R.L v. Bell Italy Sol. Corp.*, No. 618CV1971ORL22GJK, 2019 WL 5295121, at *1 (M.D. Fla. June 24, 2019) ("the Court takes judicial notice of the information on Bell Italy's Sunbiz profile because it is publicly available on the Florida Department of State's website, www.sunbiz.org."); *Demeter v. Little Gasparilla Island Fire & Rescue, Inc.*, No. 2:16-CV-264-FTM-38CM, 2017 WL 662006, at *1 (M.D. Fla. Feb. 17, 2017) (considering the Defendant's Sunbiz profile in ruling on a motion to dismiss "because the Florida Department of State's website is a verified website from a public agency").

[2]      The Court properly may consider the CBA in ruling on the instant Motion to Dismiss because it is expressly referenced in the Complaint, it is central to Plaintiff's claims and its authenticity cannot reasonably be challenged. *Allen v. Miami-Dade Cty.*, No. 01-4700-CIV, 2002 WL 732108, at *1 n.1 (S.D. Fla. Mar. 19, 2002) ("This collective bargaining agreement was attached to Defendant's Motion to Dismiss, not to Plaintiffs' Complaint. However, because Plaintiffs reference the agreement in their Complaint, and because it is central to their claims, this Court may consider the agreement without converting the motion to dismiss to a motion for summary judgment.") (citing *Brooks v. Blue Cross Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997)); *Reed v. U.S. Postal Serv.*, No. 05-21437-CIV, 2007 WL 9701800, at *1 n.3 (S.D. Fla. July 23, 2007) ("The collective bargaining agreement is not attached to the second

In his Complaint, Plaintiff quotes Article 11, Section 3 of the CBA, which provides, in pertinent part, that "the hospital shall issue the appropriate certificates upon the satisfactory completion of the training program and clearance by the Graduate Medical Education Office. Printed certificates will be furnished upon satisfactory completion of a program." (Ex. B at 21; Compl. ¶ 24.) In addition, Article 20 of the CBA expressly provides that it constitutes the entire agreement between the parties regarding the Fellowship:

> Section 3: The parties acknowledge that, during the negotiations which preceded this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to the subject or matter and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement. This Agreement, including its supplements and exhibits attached hereto, concludes all collective bargaining between the parties during the term hereto, and constitutes the sole, entire, and existing Agreement between the parties hereto, and supersedes all prior Agreements and undertakings oral and written, express or implied, or practices, between the employer and the union or its employees, and expresses all obligations and restrictions imposed on each of the respective parties during its term.
>
> Section 4: Upon ratification and approval, the provisions of this Agreement will supersede personnel rules or administrative orders and/or other rules and regulations in conflict herewith. The employer retains the right to establish through administrative order or personnel rules, practices, or procedures, which do not violate the provisions of this contract.

(Ex. B at 41.) Finally, Article 24, Section 1 of the CBA provides that it shall be effective from October 1, 2018, through September 30, 2020. (Ex. B at 43.)

---

amended complaint, but is an attachment to the motion to dismiss. Because the agreement is central to Reed's claim and its authenticity is not challenged, this Court may consider it even though it is not deciding the motion on summary judgment grounds.") (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)), *R&R adopted*, 2007 WL 9701659 (S.D. Fla. Aug. 23, 2007), *aff'd*, 288 Fed. Appx. 638 (11th Cir. 2008); *Caravello v. Am. Airlines, Inc.*, 315 F. Supp. 2d 1346, 1348–49 (S.D. Fla. 2004) (considering a collective bargaining agreement attached to a motion to dismiss) (citing *Brooks*, 116 F.3d at 1369).

Plaintiff's Fellowship was supposed to last one year. (Compl. ¶ 25.) However, Plaintiff alleges that, after starting the Fellowship, he was dissatisfied with the surgical opportunities he was provided. (*Id*. ¶¶ 25-26.) Plaintiff further alleges that he and Dr. Komotar discussed the possibility of Plaintiff leaving the Fellowship early but nevertheless receiving the Certificate of Completion for the Fellowship. (*Id*. ¶¶ 29-40.) Plaintiff further alleges that Dr. Komotar advised him that he would receive the Certificate of Completion even if the left the Fellowship early. (*Id*.) Thereafter, Plaintiff alleges that he began seeking other employment opportunities. (*Id*.) Plaintiff alleges that, after he secured another job, he resigned from the Fellowship effective November 1, 2019. (*Id*. ¶ 42.) Plaintiff alleges that, after resigning, he was informed that he "would not receive a certificate of completion because he resigned before the end of the requisite 12-month fellowship period." (*Id*. ¶ 43.) Plaintiff alleges that he "resigned from the program solely based on and in reliance on [the] agreement that he would be issued the certificate." (*Id*. ¶ 48.)

Plaintiff alleges that he "attempted to grieve and appeal the failure to issue the certificate of completion under the terms of the CBA but received no response and thus was denied the opportunity to do so." (*Id*. ¶ 52.) However, Article 12, Section 2 of the CBA expressly provides that "disputes over progress in the educational program, discharge of clinical responsibilities, . . . [and] a program termination" "shall not be considered grievances." (Ex. B at 26.)

Based on these allegations, Plaintiff attempts to assert four claims: (1) Violation of 42 U.S.C. § 1983 (Denial of Procedural Due Process) against all Defendants; (2) Violation of 42 U.S.C. § 1983 (Denial of Substantive Due Process) against all Defendants; (3) Breach of Contract against the Trust and the University; and (4) Fraudulent Inducement against the University. (*See* Compl.) Each Count incorporates all prior allegations and Counts. (Compl. ¶¶ 58, 72, 91, 103.)

## ARGUMENT

The Complaint suffers from several deficiencies that warrant dismissal. As a threshold matter, the Complaint is a shotgun pleading, in which each Count incorporates by reference all prior Counts, leading to incomprehensible and nonsensical results. The Eleventh Circuit repeatedly has condemned that practice and affirmed the dismissal of such complaints. Further, Plaintiff has not plausibly alleged any claim, and it is clear that he cannot do so. For all of these reasons, Plaintiff's Complaint properly should be dismissed.

## I.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS A SHOTGUN PLEADING.

The Complaint is an impermissible shotgun pleading. A shotgun pleading is one in which "each count . . . adopts the allegations of all preceding counts. Consequently, allegations of fact that may be material to a determination of count one, but not count four, are nonetheless made a part of count four . . . . [I]t is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). *See also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions.").

The Eleventh Circuit repeatedly has held that a shotgun pleading properly is dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Paylor*, 748 F.3d at 1126 and 1126 n.3 (collecting more than twenty cases). In fact, the Eleventh Circuit recently reaffirmed this principle in two published decisions. *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) ("a district court that receives a shotgun pleading should strike it and instruct counsel to replead the case—

even if the other party does not move the court to strike the pleading"); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1352 (11th Cir. 2018) (affirming dismissal with prejudice of shotgun complaint). Courts within this Circuit routinely dismiss such complaints. *See, e.g.*, *Aracena v. Gruler*, 347 F. Supp. 3d 1107, 1122 (M.D. Fla. 2018) (dismissing case with prejudice because "both Counts of the Amended Complaint 'incorporate by reference all prior allegations,' rendering the Amended Complaint an impermissible shotgun pleading"); *YMD Records, LLC v. Ultra Enters., Inc.*, No. 19-CV-20424-UU, 2019 WL 849888, at *2 (S.D. Fla. Feb. 15, 2019) (dismissing shotgun complaint and noting that "[d]ismissal is appropriate on those grounds alone").

Here, Plaintiff impermissibly has combined all of his claims for relief, as each Count incorporates by reference all of the Complaint's prior allegations (and Counts). (*See* Compl. ¶¶ 58, 72, 91, 103) As a result, for example, Count IV (for fraudulent inducement solely against the University) incorporates all prior claims (including claims alleged against other Defendants). Under Eleventh Circuit precedent, this pleading defect mandates dismissal.

## II.   PLAINTIFF HAS FAILED TO STATE ANY PLAUSIBLE CLAIM.

The above analysis should end the inquiry. *See Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) (a district court should dismiss or strike a shotgun complaint rather than address the pleading on the merits); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357-58 (11th Cir. 2018) (same). However, even on the merits, the Complaint suffers from multiple defects that warrant dismissal.

### A.   Legal Standard on a Motion to Dismiss

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other

words, a complaint "must consist of more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Lattimore v. Wells Fargo Bank, N.A.*, 590 Fed. Appx. 912, 913 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). A "'formulaic recitation of the elements of a cause of action will not do.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court must accept the plaintiff's well-pleaded facts as true but need not accept mere legal conclusions. *Brinson v. Welsh*, 709 Fed. Appx. 582, 584 (11th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678). However, it is well-established that documents attached to or incorporated into a complaint by reference control over contradictory allegations. *Principal Bank v. First Am. Mortg., Inc.*, No. 2:10-CV-190-FTM, 2014 WL 1268546, at *2 (M.D. Fla. Mar. 27, 2014) (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007)).

"Plausibility is the key, as the 'well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quoting *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), in turn quoting *Twombly*, 550 U.S. at 570). "In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief." *Gavilan v. Balans, L.C.*, No. 14-22791-CIV, 2014 WL 6979625, at *1 (S.D. Fla. Dec. 9, 2014) (citing *Iqbal*, 556 U.S. at 678).

### B.   Overview of Plaintiff's Claims

Although Plaintiff has asserted various statutory, tort and contractual theories in the four Counts of his Complaint, the gravamen of all of his claims is the same: Plaintiff contends that, based on alleged statements from Dr. Komotar - - statements that expressly contradict the unambiguous terms of a CBA that governs Plaintiff's relationship with Defendants and that prevents modification of same - - he is entitled to receive a Certificate of Completion for a Fellowship that he, admittedly, did not complete. The absurdity of Plaintiff's position is obvious.

As a threshold matter, Plaintiff's attempt to assert claims against the University and Dr. Komotar is improper, as the CBA makes clear that Plaintiff only had a contractual relationship with the Trust.[3] In similar circumstances, the Honorable James Lawrence King explained the relationship between the Trust and the University and dismissed with prejudice all claims against the University:

> The Basic Affiliation Agreements ("BAA") between the University of Miami and the Trust in effect during Plaintiff's residency application period, which Plaintiff referenced in his Third Amended Complaint, reveals that the there was little interrelation of operations. While the University of Miami and the Trust work in concert to make Jackson Memorial Hospital a teaching hospital, the operational sphere of each entity is clearly delineated. For example, according to Sections V-C of the BAAs, the residency program is exclusively the function and responsibility of the Trust. *See* Mot. to Dismiss at 9, 23 (D.E. 42-2). Also, the control of labor relations with regard to the residency training program was centralized with the Trust. Sections V-H of the BAAs state that physicians in the residency training program are appointed by the Trust. *Id*. at 13, 27. As such, the Trust controls the appointment, training, and supervision of its residents. Further, that the faculty members of the University of Miami may apply to work as employees or agents of the Trust under the sole and exclusive control of the Trust does not establish that common management exists. *Id*. at 1-2.

*Pouyeh v. Bascom Palmer Eye Insitute*, No. 12-CV-23580-JLK, 2014 WL 11394983, at *3 (S.D. Fla. Aug. 4, 2014), *aff'd*, 613 Fed. Appx. 802 (11th Cir. 2015).[4] On this basis alone, the claims against the University and Dr. Komotar properly should be dismissed with prejudice.[5]

---

[3]    For example, the CBA itself states that it is between the Trust and the Committee of Interns and Residents (a Union of which Plaintiff is a member by virtue of his participation in the Fellowship). (*See* Ex. B at 5.) The CBA does not even mention the University. (*See* Ex. B.)

[4]    The BAA that was in effect in *Pouyeh* is the same BAA in effect in this case.

[5]    As discussed below, further dooming Plaintiff's claims is his attempt to hold the University and Dr. Komotar (a private university and individual) liable under Section 1983, as they are not state actors.

Notwithstanding Plaintiff's improper attempt to assert claims against the wrong Defendants, the fact of the matter remains that, under the terms of the applicable contract, Plaintiff cannot state any claim. As Plaintiff himself acknowledges in his Complaint, the CBA expressly provides that he only is entitled to a Certificate of Completion "upon satisfactory completion of a program." (Ex. B at 21; Compl. ¶ 24.) That same CBA provides that it constitutes the entire agreement of the parties and shall be in effect at all times material hereto. (Ex. B at 41, 43.) As a matter of Eleventh Circuit law, "Florida courts enforce contracts according to their plain terms when those terms are unambiguous." *S & S Packing, Inc. v. Spring Lake Ratite Ranch, Inc.*, 702 Fed. Appx. 874, 878 (11th Cir. 2017) (citing *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1247 (11th Cir. 2002)).[6] Here, based on the unambiguous language of the CBA, Plaintiff's claims necessarily fail because, by not completing the program, Plaintiff was not entitled to the Certificate of Completion.

In a misguided effort to get around that bar, Plaintiff alleges that he and Dr. Komotar entered into another contract by which Dr. Komotar agreed to provide him a Certificate of Completion anyway. In essence, Plaintiff alleges that he entered into a contract by which he would receive false certification of his medical credentials. Such an alleged agreement, if enforced, would result in civil and/or criminal penalties. *See, e.g.*, Fla. Stat. § 458.327(1)(d) ("Each of the following acts constitutes a felony of the third degree: . . . (d) Attempting to obtain or obtaining a position as a medical practitioner or medical resident in a clinic or hospital through knowing misrepresentation of education, training, or experience"); Fla. Stat. § 458.331(1) ("The following acts constitute

---

[6]     The Court is "*Erie*-bound" to apply Florida substantive law in evaluating Plaintiff-s state-law claims for breach of contract (Count III) and fraudulent inducement (Count IV). *Phillips v. Mitchell's Lawn Maint. Corp.*, No. 13-20854-CIV, 2015 WL 12533113, at *4 (S.D. Fla. Nov. 17, 2015) (citing *Jackson v. BellSouth Telecomms*, 372 F. 3d 1250, 1274-75 (11th Cir. 2004)).

grounds for denial of a license or disciplinary action: . . . (gg) Misrepresenting or concealing a material fact at any time during any phase of a licensing or disciplinary process or procedure"; … (ll) Advertising or holding oneself out as a board-certified specialist, if not qualified under s. 458.3312, in violation of this chapter"). For the same reasons, such an alleged agreement would violate public policy and be unenforceable. *See Harris v. Gonzalez*, 789 So. 2d 405, 409 (Fla. 4th DCA 2001) (analyzing Chapter 458 of the Florida Statutes and affirming "the trial court's ruling that, as a matter of law, the subject contract is void as violative of Florida law and public policy and, thus, confers no enforceable rights on appellants based upon it").

In sum, and as discussed in greater detail below, none of Plaintiff's claims is factually or legally viable. Because Plaintiff's claims cannot be salvaged through amendment, dismissal should be with prejudice. *See Rance v. Winn*, 287 Fed. Appx. 840, 841 (11th Cir. 2008) (affirming dismissal of original complaint with prejudice because "district courts need not permit amendment where it would be futile to do so"); *Scheider v. Leeper*, No. 3:15-CV-364-J-34JRK, 2016 WL 916557, at *4 (M.D. Fla. Mar. 10, 2016) (dismissing original complaint with prejudice because "any amendment would be futile").

### C.    Plaintiff Fails to State a Claim under Section 1983 (Counts I and II).

In Counts I and II, Plaintiff brings claims against all Defendants (including the University and Dr. Komotar) for alleged civil rights violations under 42 U.S.C. § 1983. (Compl. ¶¶ 58-90.) Count I alleges a violation of procedural due process, and Count II alleges a violation of substantive due process. (*Id*.) Neither claim is viable.

As a threshold matter, a claim under Section 1983 requires that the Defendant be a "state actor." *Greene Dreams Shoe Care, Inc. v. Miami-Dade Cty., Fla.*, No. 13-22231-CIV, 2014 WL 7778990, at *3 (S.D. Fla. May 7, 2014); *Ball v. City of Coral Gables*, 548 F. Supp. 2d 1364, 1370

(S.D. Fla. 2008), *aff'd*, 301 Fed. Appx. 865 (11th Cir. 2008). The attached Sunbiz records (Ex. A) make clear that the University is a private corporation - - not a government agency. In fact, this Court previously has held that the University is a "private university" and, therefore, not liable under Section 1983:

> Under § 1983, a plaintiff must show that the defendant acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). UM is a private university. "Only in rare circumstances can a private party be viewed as a [s]tate actor for section 1983 purposes." *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir.2001) (holding UM did not act under color of state law when it terminated an employee). . . . Accordingly, UM is granted summary judgment with respect to Claim 23.

*Andela v. Univ. of Miami*, 692 F. Supp. 2d 1356, 1376 (S.D. Fla. 2010). This Court's decision was affirmed by the Eleventh Circuit. *Andela v. Univ. of Miami*, 461 Fed. Appx. 832, 836–37 (11th Cir. 2012) ("the district court properly rendered summary judgment on Andela's claims against [University of] Miami and UNC under 42 U.S.C. §§ 1983 and 1985 . . . . [University of] Miami, which is a private university, is not a state actor and none of the 'rare circumstances' allowing a § 1983 claim against a private actor were alleged.'"). Accordingly, the Section 1983 claims against the University should be dismissed with prejudice.

The same is true for Dr. Komotar, an employee of the University (a private corporation). *See Magee v. Trs. of Hamline Univ., Minn.*, 747 F.3d 532, 536 (8th Cir. 2014) (affirming dismissal of Section 1983 claims against private university and its dean); *Covington v. Hawkes*, No. 06-CV-416-PB, 2007 WL 655474, at *3 (D.N.H. Feb. 23, 2007) (a plaintiff "cannot state a federal cause of action under 42 U.S.C. § 1983" against "a medical school professor at a private University"). Therefore, the Section 1983 claims against Dr. Komotar also should be dismissed with prejudice.

Even if the Court were to conclude that the University and Dr. Komotar are state actors, Plaintiff's Section 1983 claims nonetheless fail. Both claims are premised on Plaintiff's flawed

assertion that he is entitled to a Certificate of Completion for a Fellowship that he failed to complete. As to plaintiff's procedural due process claim, under Eleventh Circuit law, it "is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a <u>protected</u> interest that gives rise to a federal procedural due process claim." *Cotton v. Jackson*, 216 F.3d 1328, 1330–31 (11th Cir. 2000) (emphasis added) (citing *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (*en banc*), *Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999) and *Harris v. Board of Educ.*, 105 F.3d 591, 596 (11th Cir. 1997)). Plaintiff does not identify any flawed procedures[7], and Plaintiff had no protectable interest in receiving a false Certificate of Completion for a Fellowship he did not complete. Therefore, his procedural due process claim necessarily fails.

The same is true of his substantive due process claim. "[T]hese types of claims have been all but eliminated in this circuit." *Henry Co. Homes, Inc. v. Curb*, 548 F. Supp. 2d 1281, 1293 (N.D. Fla. 2008). This Court recently reaffirmed that principle:

> "Substantive due process is a doctrine that has been kept under tight reins, reserved for extraordinary circumstances." *Nix v. Franklin Cty. School Dist.*, 311 F.3d 1373, 1379 (11th Cir. 2002). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (internal citation omitted). "[N]ot every wrong committed by a state actor rises to the level of a 'constitutional tort' sufficient to trigger a substantive due process violation." *Lee v. Hutson*, 810 F.2d 1030, 1032 (11th Cir. 1987). A government actor's conduct "will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003). "Even intentional wrongs seldom violate the Due Process Clause[.]" *Maddox*, 727 F.3d at 1119. And "[d]eterminations of

---

[7]     To the extent Plaintiff's position is that he was entitled to but not did receive the grievance procedures set forth in the CBA, such argument should fail. By their express terms, those grievance procedures did not apply to Plaintiff's situation. (Ex. B at 26.)

> what is egregious conduct must not be made in the glow of
> hindsight; decisions made by a government actor *must be*
> *egregious—that is, shock the conscience—at the time the*
> *government actor made the decision.*" *Waddell*, 329 F.3d at 1305
> (emphasis in original).

*AHE Realty Assoc., LLC v. Miami-Dade Cty., Fla.*, 320 F. Supp. 3d 1322, 1334–35 (S.D. Fla.

2018) (all alterations in original). Applying that rigorous standard, this Court dismissed a

substantive due process claim under Section 1983 because the conduct at issue (the government's

alleged infringement of a party's building/zoning rights) was nor conscience-shocking. *Id*. The

same conclusion is appropriate here, as the alleged denial of a Certificate of Compliance is neither

an infringement of a fundamental right nor conscience-shocking. In fact, the only "conscience-

shocking" aspect of this case is that a medical doctor would pursue a federal lawsuit to obtain

certification credentials that he, admittedly, did not earn.

Finally, even if the Court were to conclude that Dr. Komotar is a state actor, the claims are

further deficient. To the extent Plaintiff seeks to hold him liable in his official capacity (as alleged

in the Complaint's case caption and paragraph 4), such claim is barred by the Eleventh

Amendment. *See Washington v. Bauer*, 149 Fed. Appx. 867, 871–72 (11th Cir. 2005) (noting that

"the Eleventh Amendment of the Federal Constitution bars . . . § 1983 claims" against government

employees in their official capacities and that "the State of Florida has not waived its immunity as

to § 1983 claims, nor has Congress abrogated it").

Further, Dr. Komotar would be entitled to qualified immunity from suit. "[F]ederal law

provides government officials a qualified immunity when sued individually for an alleged

violation of a constitutional right." *Randall v. Scott*, 610 F.3d 701, 714 (11th Cir. 2010). "Qualified

immunity offers complete protection for individual government officials performing discretionary

functions 'insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). *See also Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1300-01 (11th Cir. 2007) (affirming district court's decision that public university employees were entitled to qualified immunity because the plaintiff "failed to present any cases that show the three defendants violated her clearly established equal protection rights" by their conduct). Here, the undersigned has been unable to locate any authority for the proposition that a medical doctor is entitled to certification materials that were not earned. To the contrary, the authority cited in Section B *supra* and Section D *infra* suggests that no such authority exists. Thus, Dr. Komotar would be entitled to qualified immunity on both Section 1983 claims.

For any and all of these reasons, Plaintiff has failed to state a plausible claim under Section 1983. It is clear that he cannot do so. Therefore, these claims should be dismissed with prejudice.

### D.    Plaintiff Fails to State a Claim for Breach of Contract (Count III).

In Count III, Plaintiff attempts to state a claim for breach of contract against the Trust and the University. (Compl. ¶¶ 91-102.) Plaintiff contends that, pursuant to the CBA and his alleged agreement with Dr. Komotar, he was entitled to his Certificate of Completion. (*Id.*) Plaintiff plainly is wrong. The "existence of a valid contract is a threshold question of law for the trial court." *Acumen Const., Inc. v. Neher*, 616 So. 2d 98, 99 (Fla. 2d DCA 1993) (citing *Caltagirone v. Sch. Bd. of Hernando Cty.*, 355 So. 2d 873 (Fla. 2d DCA 1978)). As noted in Section B *supra*, Plaintiff has not satisfied the terms of the CBA to obtain his Certificate, as he admittedly did not complete the Fellowship.

Further, Plaintiff's alleged contract with Dr. Komotar to provide a Certificate, which expressly contradicts the bargained-for and express terms of the CBA, is void. As noted above, the enforcement of such an agreement would violate Florida law and public policy. "It is the

14

appropriate function of courts of justice to enforce contracts according to the <u>lawful intent</u> and understanding of the parties." *Bronson v. Rodes*, 74 U.S. 229, 245 (1868) (emphasis added).

Thus, parties "may not enter a contract that is void as a matter of public policy." *Neiman v. Provident Life & Accident Ins. Co.*, 217 F. Supp. 2d 1281, 1286 (S.D. Fla. 2002) (citing *King v. Allstate Ins. Co.*, 906 F.2d 1537, 1540 (11th Cir. 1990)). Public policy empowers this Court to decline enforcement of a contract. *Id*. (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42 (1987)). "Contracts that are contrary to public policy are void because they have no legal sanction and establish no legal bond between the parties." *Id*. (citing *United Ass'n of Journeymen & Apprentices v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 823 (Fla. 1953)). A contract violates public policy if it has "a bad tendency" or "contravene[s] the established interests of society." *Id*. (citing *Thomas v. Atlantic Coast Line R. Co.*, 201 F.2d 167, 169 (5th Cir. 1953)). To make that determination, the Court "must look to established law, primarily to statutes and secondarily to decisions of the court." *Id*. (citing *Castro v. Sangles*, 637 So. 2d 989, 9901 (Fla. 3d DCA 1994)).

As this Court has recognized, a contract is void and enforceable if it "violates a provision of the constitution or a statute." *Power Fin. Credit Union v. Nat'l Credit Union Admin. Bd.*, No. 11-CV-20638-KMM, 2011 WL 13175604, at *2 (S.D. Fla. Sept. 7, 2011) (citing *Cerniglia v. C & D Farms, Inc.*, 203 So. 2d 1, 2 (Fla. 1967) and *Title & Trust Co. of Fla. v. Parker*, 468 So. 2d 520, 523 (Fla. 1st DCA 1985)), *aff'd*, 494 Fed. Appx. 982 (11th Cir. 2012). *See also Harris v. Gonzalez*, 789 So. 2d 405, 409 (Fla. 4th DCA 2001) (affirming "the trial court's ruling that, as a matter of law, the subject contract is void as violative of Florida law and public policy and, thus, confers no enforceable rights on appellants based upon it," where alleged contract would violate Chapter 458 of the Florida Statutes governing the practice of medicine); *Obregon v. Windmills Capital, Inc.*,

No. 13-CV-80669, 2015 WL 11348275, at *5 (S.D. Fla. Jan. 22, 2015) (granting "summary judgment in favor of Defendants because such claims rely upon an illegal transaction").

Here, it cannot reasonably be disputed that the alleged contract Plaintiff seeks to enforce is void as against public policy. As noted above, multiple Florida statutes proscribe the false certification of medical credentials. Yet, that is precisely what Plaintiff attempts to gain in this lawsuit.[8] Any claim based on this alleged agreement necessarily fails and should be dismissed with prejudice. *See Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 823 (Fla. 1953) ("a contract against public policy may not be made the basis of any action either in law or in equity"); *Bloom v. K & K Pipe & Supply Co., Inc.*, 390 So. 2d 770, 773 (Fla. 4th DCA 1980) (affirming dismissal with prejudice of contract claims because the plaintiff "could not state a cause of action based upon" an unenforceable contract).

### E.     Plaintiff Fails to State a Claim for Fraudulent Inducement (Count IV).

In Count IV, Plaintiff attempts to state a claim for fraudulent inducement against the University. (Compl. ¶¶ 103-111.) This claim arises out of the same alleged facts underlying Plaintiff's contract claim. (*Id.*) "Florida courts consistently hold" that tort claims necessarily fail to the extent that they "are premised on the same conduct and representations that were insufficient to form a contract and are merely derivative of the unsuccessful contract claim." *Dixon v. Countrywide Fin. Corp.*, 664 F. Supp. 2d 1304, 1309 (S.D. Fla. 2009) (collecting Florida appellate decisions) (internal quotations omitted). *See also Conner, I, Inc. v. Walt Disney Co.*, 827 So. 2d 318, 319 (Fla. 5th DCA 2002) ("To the extent that Conner attempts to assert tort claims, they are

---

[8]     To be clear, Plaintiff alleges that he is "entitled to obtain his certification of completion from Defendant" (Comp. ¶ 102) and requests injunctive relief for same (Compl. at 18-19, Relief Requested) even though he, admittedly, did not complete the Fellowship.

likewise barred, as they flow from the [unenforceable] alleged oral contract and are merely derivative.") (citing *Hertz v. Salman*, 718 So. 2d 942 (Fla. 3d DCA 1998)). On this basis alone, dismissal of this claim is proper.

Further, Plaintiff has not plausibly alleged the elements of such a claim. "Florida law defines fraudulent inducement as '[a] false representation of a material fact, made with knowledge of its falsity, to a person ignorant thereof, with intention that it shall be acted upon, followed by reliance upon and by action thereon amounting to substantial change of position.'" *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1315 (11th Cir. 1998) (quoting *Biscayne Blvd. Props., Inc. v. Graham*, 65 So. 2d 858, 859 (Fla. 1953), in turn quoting *Wheeler v. Baars*, 33 Fla. 696, 15 So. 584 (Fla. 1894)). The "plaintiff's reliance must be 'justifiable.'" *Id.* (quoting *Saunders Leasing Sys., Inc. v. Gulf Cent. Distrib. Ctr., Inc.*, 513 So. 2d 1303, 1306 (Fla. 2d DCA 1987)). *See also Lou Bachrodt Chevrolet, Inc. v. Savage*, 570 So. 2d 306, 308 (Fla. 4th DCA 1990) (noting that justifiable reliance is a requirement for a claim of fraudulent inducement).

As a matter of law, a plaintiff cannot establish justifiable reliance when he knew or should have known that the alleged misrepresentations were false. *L & L Doc's, L.L.C. v. Fla. Div. Of Alcoholic Beverages and Tobacco*, 882 So. 2d 512 (Fla. 4th DCA 2004). In that case, the Fourth District Court of Appeal held that a fraudulent inducement claim failed as a matter of law because the plaintiffs could not justifiably rely on an alleged representation that a sale contract would include illegal slot machines. *Id.* at 514-15. The appellate court continued:

> Without admitting that there was a misrepresentation, seller argues that, in any event, the buyers were not justified in relying upon a misrepresentation which they knew or should have known, with the exercise of some diligence, was false. We agree. Buyers' ignorance of the law is not excused simply because they are not from this country. *See generally State v. Beasley*, 580 So. 2d 139, 142 (Fla. 1991) ("As to notice, publication in the Laws of Florida or the Florida Statutes gives all citizens constructive notice of the

consequences of their actions"); *see also Davis v. Strople*, 158 Fla.
614, 29 So. 2d 364 (1947) (ignorance of the law is no excuse). The
fact that gambling may be legal in the buyers' respective countries
is irrelevant. Moreover, even if the slot machines and the revenues
gained from them had been a subject of the contract, buyers would
still have no action on the contract because such activity is illegal.
*See Katz v. Woltin*, 765 So. 2d 279, 280–81 (Fla. 4th DCA 2000)
(recognizing that agreements in violation of public policy are void
and unenforceable).

*Id.* at 515-16. These same principles hold true here. The alleged fraudulent misrepresentations

relate to Plaintiff's receipt of a false certification of his medical credentials. The provision of a

Certificate of Completion of a Fellowship that Plaintiff did not complete would violate Florida law

and public policy. Therefore, Plaintiff could not justifiably rely on such alleged misrepresentations.

Finally, it is well-established that claims for fraudulent inducement are barred when the

alleged misrepresentation explicitly contradicts an unambiguous provision of a written contract.

*Yamashita v. Merck & Co., Inc.*, No. 11-62473-CIV, 2013 WL 275536, at *4 (S.D. Fla. Jan. 24,

2013) (collecting cases). Here, the CBA expressly provides that a Certificate of Completion would

be provided "upon satisfactory completion of a program." (Ex. B at 21; Compl. ¶ 24.) Because he

did not complete the Fellowship, Plaintiff could not justifiably rely on any alleged promise that he

would receive one on terms expressly contradicted by the CBA.

For all of these reasons, Plaintiff's fraudulent inducement claim must fail.

## CONCLUSION

Plaintiff's own Complaint is self-defeating. Not only is it a shotgun pleading, but the claims

he has chosen to assert are factually and legally meritless. In fact, Plaintiff's initiation of this

lawsuit to obtain a medical certification that he has not earned is frivolous and should not be

countenanced by the Court. His Complaint fails to state any claim upon which relief can be granted.

Therefore, it properly should be dismissed. Further, because any amendment would be futile, the dismissal should be with prejudice.

WHEREFORE, the University and Dr. Komotar respectfully request that the Court (1) dismiss Plaintiff's Complaint as set forth above; (2) award them their attorneys' fees and costs to the fullest extent permitted by applicable law (including, but not limited to, 28 U.S.C. § 1920 and 42 U.S.C.§ 1988); and (3) grant such further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Christopher M. Yannuzzi
    Eric D. Isicoff
    Florida Bar No. 372201
    Isicoff@irlaw.com
    Teresa Ragatz
    Florida Bar No. 545170
    Ragatz@irlaw.com
    Christopher M. Yannuzzi
    Florida Bar No. 92166
    Yannuzzi@irlaw.com

*Counsel for Defendants, University of Miami and Ricardo Komotar*

19

<u>**CERTIFICATE OF SERVICE**</u>

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via

CM/ECF this 26th day of March, 2020, upon the following:

| | |
|---|---|
| Christopher J. Brochu, Esq.<br>Law Office of Christopher J. Brochu, PLLC<br>One Call Tower<br>841 Prudential Drive, Suite 1200<br>Jacksonville, Florida 32207<br>Tel.: (904) 201-1771<br>E-mail: c.brochu@brochulaw.com<br><br>*Co-Counsel for Plaintiff* | Jason J. Bach, Esq.<br>The Bach Law Firm<br>7881 W. Charleston Blvd., Suite 165<br>Las Vegas, Nevada 89117<br>Tel.: (702) 925-8787<br>E-mail: jbach@bachlawfirm.com<br><br>*Co-Counsel for Plaintiff (admitted pro hac vice)* |

By: /s/ Christopher M. Yannuzzi
　　Christopher M. Yannuzzi